IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AZTEC OIL & GAS, INC., ET AL. | § | CASE NO. 16-31895 |
|     Debtor | § | (Chapter 7) |
| | § | JUDGE JONES |

_____

| | | |
|---|---|---|
| RODNEY TOW, TRUSTEE | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | ADVERSARY NO. 18-_____ |
| | § | |
| TREK PARTNERS, LLC, JOSHUA | § | |
| POSTEN, MEMBERS/INVESTORS | § | |
| OF TREK PARTNERS, LLC NOS. 1-4, | § | |
| JEREMY DRIVER, INDIVIDUALLY | § | |
| AND AS PRESIDENT AND A | § | |
| DIRECTOR OF AZTEC OIL & GAS, | § | |
| INC, ET AL,  MARK VANCE, | § | |
| INDIVIDUALLY AND AS A | § | |
| DIRECTOR OF AZTEC OIL & GAS, | § | |
| INC., ET AL, KENNETH LEHRER, | § | |
| INDIVIDUALLY AND AS A | § | |
| DIRECTOR OF AZTEC OIL & GAS, | § | |
| INC., ET AL,  BARRY CROMEANS, | § | |
| INDIVIDUALLY AND AS FORMER | § | |
| CFO FOR AZTEC OIL & GAS, INC. | § | |
| ET AL.,  THOMAS K. ERWIN, LLC., | § | |
| THOMAS K. ERWIN, AND | § | |
| ZIEGLER-PERU, INC. | § | |

## Trustee's Original Complaint

**TO THE HONORABLE DAVID JONES, UNITED STATES BANKRUPTCY JUDGE:**

Rodney Tow, Trustee and Plaintiff herein, files this Complaint against Trek Partners,

LLC, Joshua Posten, Members/Investors of Trek Partners, LLC Nos. 1-4, Jeremy Driver,

Individually and as President and a Director of Aztec Oil & Gas, Inc. Et Al; Mark Vance

Individually and as a Director of Aztec Oil & Gas, Inc. Et Al; Kenneth Lehrer, Individually and as a Director of Aztec Oil & Gas, Inc. Et Al; Barry Cromeans, Individually and as Former CFO for Aztec Oil & Gas, Inc., Et Al.; Thomas K. Erwin, LLC, Thomas K. Erwin, and Ziegler-Peru, Inc., Defendants, and in support thereof would show this Court as follows:

## I.
## Jurisdiction and Venue

1.     This Court has jurisdiction pursuant to 28 U.S.C. §1334.

2.     Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

3.     This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (E), (F), (H), (K), and (O).

4.     The Plaintiff consents to the entry of final orders or judgment by the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9027(a)(1) and Local Bankruptcy Rule 7008-1.

## II.
## Parties

5.     The Trustee may be served through his Counsel of Record, Julie M. Koenig, Cooper & Scully, PC, 815 Walker St., Suite 1040, Houston, Texas 77002, Julie.Koenig@cooperscully.com.

6.     Defendant Trek Partners, LLC may be served through its Registered Agent, Joshua V. Posten, 16107 Kensington Dr., Suite 290, Sugar Land, Texas 77478, with a copy to its Counsel of Record, Carolyn V. Carollo, 2929 Allen Parkway, Suite 2800, Houston, Texas 77019.

7.     Defendant Joshua Posten may be served at 16107 Kensington Dr., Suite 290, Sugar Land, Texas 77478.

8.      Defendants Members/Investors of Trek Partners, LLC Nos. 1-4 may be served wherever they may be found.  Defendants Members/Investors of Trek Partners, LLC Nos. 1 - 4 are unidentified at this time despite Trustee's best efforts in locating the Trek Partners,  LLC Nos. 1 - 4, and the Trustee shall amend the Complaint to include names and contact information upon receipt of the same.

9.      Defendant Jeremy Driver may be served at 21502 Rosehill Church Road, Tomball, Texas 77377-5854, with a copy to his Counsel of Record, Alistair Dawson, 1221 McKinney Street, Suite 4500, Houston, Texas 77010-2010.

10.     Defendant Mark Vance may be served at 10214 Kielder Point Drive, Spring, Texas 77370, with a copy to his Counsel of Record, Alistair Dawson, 1221 McKinney Street, Suite 4500, Houston, Texas 77010-2010.

11.     Defendant Kenneth Lehrer may be served at 5555 Del Monte Dr., Suite 802, Houston, Texas 77056, with a copy to his Counsel of Record, Alistair Dawson, 1221 McKinney Street, Suite 4500, Houston, Texas 77010-2010.

12.     Defendant Barry Cromeans may be served at 33311 Alton Wright Dr., Magnolia, Texas 77355-3300.

13.     Defendant Thomas K. Erwin, LLC, may be served through its Registered Agent, Thomas K. Erwin, 1811 Bering Drive, Ste. 230, Houston, Texas 77057, and 5728 Tanglewood Cove St., Houston, Texas 77057-3536.

14.     Defendant Thomas K. Erwin may be served at 5728 Tanglewood Cove St., Houston, Texas 77057-3536

15.     Defendant Ziegler-Peru, Inc. may be served through its Registered Agent, Edward R. Ziegler, 1964 W. Gray St., Ste. 201, Houston, Texas 77019-4812.

## III.
## History and Background

16.    Aztec Oil & Gas, Inc. ("Aztec") was incorporated under the laws of the State of Nevada on November 1, 2003.    It merged with a Utah corporation, Aztec Communications Group, Inc on April 20, 2004, with the name Aztec Oil & Gas, Inc. as the surviving entity.

17.    Aztec formed three wholly owned subsidiary corporations in Nevada named Aztec Drilling & Operating Company, Aztec Energy, LLC, and Aztec Operating Company (the "Wholly Owned Entities").    The Wholly Owned Entities were formed on August 14, 2006, August 14, 2006, and September 1, 2006, respectively.

18.    Beginning in January of 2009, and continuing until December 0f 2012, Aztec formed fourteen limited partnerships (the "Limited Partnerships") of which it was the general partner and owned a 29% interest in each.

19.    Between 2006 and 2012, Franklin Fisher designed an investment drilling program and, using SEC registered broker dealers, raised approximately fifty-three million dollars through the Limited Partnerships to invest in oil and gas interests in wells in Texas.

20.    From June of 2007, through February 1, 2010, Franklin Fisher was the CEO and Director of Aztec.

21.    During the period when Mr. Fisher was CEO of Aztec, Aztec, the Wholly Owned Entities and the Limited Partnerships (the "Aztec Entities") reported and were consolidated under Aztec's financial statements according the generally accepted accounting procedures audit rules.

22.     From 2005 until April 30, 2013, Larry Hornbrook was the CFO of Aztec working on an hourly basis to perform accounting functions for Aztec.   During this period he was paid a total of $135,313.00.

23.     John Smith and the firm of Schmuck, Smith Tees & Company was the outside accounting firm who performed outside accounting work for the Aztec Entities.  Their work was then audited by a separate SEC qualified CPA firm to  perform the SEC audits.    Upon information and belief, the last annual audit was performed in 2011 or 2012.

24.     When Mr. Hornbrook retired, the Board resolved to enter into a consulting agreement with John Smith and elected him as the new CFO.

25.     As the Aztec Entities performed literally no field accounting or reporting, and had an outside CPA firm handling its accounting, it required few employees and incurred few internal expenses other than a simple office.

26.     When Mr. Fisher resigned as president and CEO of Aztec effective February 1, 2010, Waylan Johnson became the new president.   Mr. Johnson also owned Resaca Resources which operated some of the wells in which the Aztec Entities held an interest.

27.     While president of Aztec, Mr. Johnson, through his company Resaca Resources, sold a 14% working interest in what are known as the McBride wells to the Aztec Entities.

28.     In early 2013, it was discovered that Mr. Johnson had overpaid the Limited Partnerships placing the Aztec Entities in a financial bind.   On June 10, 2013, the Board resolved to terminate Mr. Johnson as president.   At that time the Board of Directors consisted of Mark Vance, Kenneth Lehrer and Dayton Wheeler[1].

29.     The overpayments were subsequently booked as accounts receivable owed by the Limited Partnerships to Aztec.

---

[1] Dayton Wheeler is Franklin Fisher's stepson.   Mr. Wheeler is married to one of Mike Watt's daughters.

30.   Mr. Johnson was asked but refused to sign a Confidential Corporate Assistance Agreement so, on July 9, 2013, the Board resolved to hire Jim Pierce as independent counsel to sue Mr. Johnson.

31.   On October 3, 2013, the Board resolved to elect Fred Ziedman as interim president of Aztec, effective October 1, 2013, until they could find a new president.

32.   On March 13, 2014, the Board resolved to elect Jeremy Driver as president effective March 17, 2014.  Jeremy Driver was formerly with Hydrocarb Energy Corporation of which Mike Watts was the President.  Jeremy Driver was previously married to the second daughter of Mike Watts.

33.   Jeremy Driver was hired at an annual salary of $175,000.00.

34.   Prior to Mr. Driver being elected as President of Aztec, several lawsuits were filed.

35.   Aztec sued Waylon Johnson (the "Johnson Litigation") for the damage to the company, and sued Ziegler-Peru (the "Ziegler-Peru Litigation") over its failure to drill, complete and equip a total of 97 wells in Brown and Coleman Counties, Texas.  At the time of the Ziegler-Peru lawsuit, the Aztec Entities had invested approximately ten million dollars ($10,000,000) with Ziegler-Peru and still had an outstanding deposit balance of $1,889,000 with Ziegler-Peru.

36.   On April 4, 2014, the Board resolved that it was in the best interest of Aztec to terminate all current litigation.  The Board authorized Jeremy Driver to take any and all actions necessary to negotiate a full and final settlement of the Johnson and Ziegler-Peru litigation.

37.   Mr. Driver subsequently settled the lawsuit against Waylon Johnson by paying him one hundred thousand dollars ($100,000.00) for his stock in Aztec and non-suiting the case.

The Board approved the settlement on September 19, 2014, and the return of the stock as treasury stock on October 23, 2014.

38. Mr. Driver also settled the Ziegler-Peru lawsuit by entering into a Final Settlement and Mutual Release agreement whereby Aztec transferred its interest in all wells drilled or to be drilled by Ziegler-Peru to Ziegler-Peru in exchange for a non-suit of all counter-claims against Aztec.  This was done despite the fact that Ziegler-Peru had offered to either sell all of its interests in the wells to Aztec or agree to a partition of the wells between the two parties.

39. When questioned, Mr. Driver could not recall if he received approval from the Aztec Board of Directors to settle this  lawsuit.  To date, no minutes from a Board of Director's meeting authorizing this  settlement have been found or produced.

40. On April 17, 2014, Mr. Driver hired Barry Cromeans as the first full time CFO for Aztec in the company's history.   His salary was $175,000.00 per year plus 400,000 in stock options, medical insurance, cell phone, and other perks.  At the time Mr. Cromeans was hired, Aztec was not expanding or drilling, only collecting funds from the investments in wells.  Evidently he was hired at an inflated salary to handle the accounting that Larry Hornbrook and the outside firm of Schmuck, Smith, Tees & Company had traditionally handled on an hourly basis.   Upon information and belief, he was originally hired to bring Aztec into compliance with SEC regulations to begin trading on the regulated stock market, not as "penny stocks".   This was never accomplished.

41. Board of Director's approval to hire Mr. Cromeans was not obtained until April 2, 2015.

42. On April 1, 2014, Mr. Driver obtained a six hundred thousand dollar loan ($600,000) for Aztec from Creditsuisse Ltd., a company owned by Franklin Fisher, purportedly  to cover

drilling costs and to continue to drill wells for the Limited Partnerships.   No record of the use of those funds has ever been discovered or produced and Aztec did not drill wells during Mr. Driver's presidency of Aztec.

43.   In early 2015, on behalf of the shareholders of the Aztec Entities, Mr. Fisher requested that Aztec hold an annual shareholder's meeting and provide consolidated financial statements from Aztec.

44.   In response to Mr. Fisher's request, on February 9, 2015, Jeremy Driver entered into a Fee Agreement with Christian, Smith & Jewell, LLP ("CSJ") to investigate and prosecute any fraud, embezzlement, breach of fiduciary duty, or any cause of action deemed necessary on behalf of Aztec.    Also on February 9, 2015, Aztec paid CSJ a $50,000 retainer.   All of this was done without Board approval.

45.   Further in response to Mr. Fisher's request, on April 2, 2015, a special meeting of the Aztec Board of Directors was held.   In that meeting the number of Directors was increased from three to four with Mr. Driver elected as the fourth Director and Chairman of the Board of Directors.   In addition, Mr. Driver was provided severance pay in the event his employment was terminated without cause by Aztec.

46.   At that meeting, the bylaws were amended to:

   a.   Withdraw the ability of the shareholders to take action by written consent, action can only be taken at an annual or special meeting of the shareholders; and,

   b.   Direct that only the Chairman of the Board of Directors, a majority of the Board of Directors, or the President or CEO can call a special meeting of the shareholders of Aztec.

47.   Further at the meeting the Board voted to:

a. Retroactively terminate the International Fluid Dynamics, Inc. Consulting Agreement as of the date Mr. Fisher was hired as CEO (June 15, 2007), to demand Mr. Fisher forfeit all accrued and unpaid fees due under the agreement after he was hired as CEO, and demand Mr. Fisher return all fees previously paid by Aztec after Mr. Fisher was hired as CEO;

b. Terminate the Aztec Consulting Agreement with Mr. Fisher as of the original date of the agreement (effective February 2, 2010) and demand that Mr. Fisher repay anything paid under the agreement by Aztec;

c. Demand Mr. Fisher repay all attorney's fees paid by Aztec on his behalf related to his Department of Justice matter;

d. Terminate Robert Sonfield as attorney for Aztec;

e. Appoint the Loev Law Firm, PC as securities counsel for Aztec;

f. To engage attorneys to pursue legal action against Mr. Fisher and Mr. Sonfield; and,

g. Authorize Aztec to provide second priority security interests to Aztec's legal counsel, Christian Smith & Jewell, LLP, to secure the payment of legal fees due in connection with the legal actions, legal services and guidance from attorneys to pursue legal action against Mr. Fisher and Mr. Sonfield.

48. On April 2, 2015, Aztec Oil & Gas and Aztec Energy filed an Original Petition against Franklin Fisher, Robert Sonfield and L. Mychal Jefferson, II in the United States District Court for the Southern District of Texas in Cause Number 4:15-cv-00866 (the "Fisher Litigation"). The lawsuit was a forty-two page document filed by CSJ on the very same date they received Board approval to be employed and file suit. The lawsuit alleged that

the merger between Aztec and Aztec Communications Group was an invalid merger, that through various machinations Mr. Fisher, through his trust, the Livingston Growth Trust Fund obtained all 100,000 shares of the Series A stock in Aztec which gave him a non-dilutable 70% voting right in Aztec, that Mr. Fisher and Mr. Sonfield de-registered Aztec from the stock market leaving it to trade as a "pink sheet" stock in 2009, and bringing other actions as outlined in the April 2, 2015 Board of Director's minutes.

49.  Director Dayton Wheeler attended the April 2, 2015, Board meeting telephonically and was not advised in advance as to the purpose of the meeting.   On April 7, 2015, Mr. Wheeler sent an email to the other Directors retracting, voiding and rescinding his approval of the actions taken at that meeting.   In his email he stressed that the actions taken at the meeting were, in essence, to take away all of the shareholders' powers, subordinate them to the Board, and perpetuate Mr. Driver and the others as Directors.

50.  Mr. Driver commissioned and received from Ralph E. Davis Associates, Inc. a report (the "R.E. Davis Report") giving the estimated reserves and future net revenue of the Aztec Entities.   The R.E. Davis Report estimated the future net income at forty-six million six hundred forty eight thousand nine hundred dollars ($46,648,900.00) as of December 31, 2014.

51.  Beginning sometime in late 2014, Mr. Driver began selling off all of the Aztec Entities interests in oil and gas wells to various parties.   Upon information and belief, those sales were:

    a.  12/01/14 - All working interest in Robinson Wells in Fort Bend County, Texas to Thomas K. Erwin, LLC for $575,000.00;

      b.  05/19/15 - All working interests in SYDRI-operated wells to Dallas Petroleum Group for $528,168.00; and,

      c.  11/01/15 - All interest and rights in 222 wells in Texas to Trek Partners, LLC for $1,200,000.00.

52.    According to Mr. Driver in his 2004 examination, he did not place these interests with a company to market the interests, he sold them to friends and people he knew in the business.   Despite the fact that Burch Downman told Mr. Driver he would beat any offer for the 222 wells sold to Trek Partners, Mr. Driver never gave him the opportunity to bid higher than the price paid by Trek Partners.

53.    Mr. Driver did not obtain Board approval for the sales to Thomas K. Erwin, LLC or Dallas Petroleum Group and only obtained Board approval for the sale to Trek Partners after the effective date of the sale.

54.    Joshua Posten was the managing partner of Trek Partners.   Previously, Mr. Driver was a groomsman at Mr. Posten's wedding.  Mr. Posten did not have any experience in the oil and gas industry and did not perform any due diligence prior to purchasing the interests in the 222 wells.   Upon information and belief, Mike Watts served as President of Geoserve Marketing, LLC, a member of Trek Partners, and invested at least $100,000.00 in Trek Partners.

55.    On December 4, 2015, Mr. Driver conducted a Special Meeting of the Aztec Board of Directors.   In that meeting the Board approved of the sale of all of the Limited Partnership assets to Trek Partners for $1.2 million despite the fact that many of the assets had already been sold to other third parties as set forth in paragraph 50 a-b, supra. The reason for the sale was that purportedly the cash funds of the Limited Partnerships

were insufficient to pay the obligations and other liabilities of the Partnerships despite the fact that the average monthly income for the Limited Partnerships was $68,542.00.

56.    In addition to the sale of the Limited Partnership assets, the Board approved the following:

    a.   The dissolution of the Limited Partnerships after the sale of the assets and winding up of the entities;

    b.   Mr. Driver's salary being reduced to 50% of the full-time rate;

    c.   Authorizing Mr. Driver to use his discretion to use the remaining corporate funds to pay various vendors, including retainers to attorneys, payables and required corporate expenditures; and,

    d.   To terminate Mr. Cromeans as CFO and authorizing Mr. Driver to try to negotiate a lower severance pay than the 2 years' salary under his employment agreement.

57.    Interestingly enough, on Aztec's server were unsigned minutes from a Board meeting on December 5, 2014, whereby Mr. Driver explained that the book value of Aztec was estimated at twenty-four million dollars ($24,000,000.00) and that Aztec owns non-controlling interest and that the reserve reports do not necessarily affect the book value. This entry was made despite that fact that all of the assets of Aztec, except for two small interests in wells had already been sold.

58.    Upon information and belief, in November of 2015, Mr. Driver sold all of the furniture and the computers belonging to Aztec except for the server.   Mr. Driver moved all of Aztec's paper files and the server into his personal storage unit.  Aztec's offices were closed on November 30, 2015.

59.     Between December 23, 2015, and April 15, 2016, Mr. Driver distributed $1,227,737.15 of the proceeds from the sale of the oil and gas interest to the various investors in the Limited Partnerships, paid Barry Cromeans $320,318.38, and paid himself $176,741.74. The payments to Mr. Cromeans were listed on the Aztec Bankruptcy Schedules as payments to insiders salary, expense reimbursement, partial severance and accrued PTO. The payments to Mr. Driver were listed on the Aztec Bankruptcy Schedules as payments to insiders for salary and reimbursement.

60.     These payments were made despite the fact that the Limited Partnerships owed Aztec for the overpayments made by Mr. Johnson.

61.     After the payments were made, there is $1,075,430.85 in missing funds.

62.     At some time prior to April 13, 2016, Aztec, through Mr. Driver, paid a retainer to CSJ in the amount of $308,837.82.

63.     On April 13, 2016, CSJ filed all of the Aztec Entities (hereinafter referred to as the "Debtors") in separate Chapter 11 proceedings, obtained an order for joint administration of all of the cases, and had them designated as complex chapter 11 proceedings.

64.     Neither CSJ nor Mr. Driver obtained Board approval for the bankruptcy filings.

65.     Mr. Driver did not physically sign the voluntary petitions, schedules or statement of financial affairs.

66.     On the date of filing the Debtors  had only $222,211.42 in cash on hand, $59,000 in outstanding receivables, a 6.92% working interest in Hrivnatz-McBride #1 Well, a 6.92% working interest in Hrivnatz-McBride #1b Well, and the Fisher Litigation.   In other words, it had nothing to reorganize.

67.     From the date of filing through the date of conversion, Mr. Driver was paid salary and expense reimbursements in the amount of $159,330.26, his salary being approximately $17,000 per month.   Mr. Driver's salary was $3,000 higher than when Aztec was operating and $10,000 higher than he was paid when he was shutting down Aztec.   The remainder of the funds plus collected receivables were paid for insurance, IT data hosting, U.S. Trustee's fees, and general and administrative expenses.

68.     Mr. Fisher continued to take his salary from the Debtors despite the fact that it did not have an office, office equipment, computers, or was conducting any appreciable business.

69.     The total income for the Debtors for the fourteen months they were in Chapter 11 was only $38,201.25.

70.     Likewise, during this time period, the Debtors spent $155,692.50 in needless litigation with CSJ primarily against Mr. Fisher over his stock in Aztec, stock which became void on the date of filing.

71.     On August 16, 2017, when the Debtors  had virtually no funds remaining on account, Mr. Driver converted all of the Debtors  to Chapter 7 Proceedings.

72.     When the Trustee attempted to subpoena the Debtors' books and records from the Directors, he was told that their Counsel, Mr. Alistair Dawson had the records.   The Trustee contacted Mr. Dawson to gain access to the records and was presented with 97 boxes of virtually worthless documents, no corporate books and records, no accounting information, no record of the sale of the well interests, no employment agreements, and no record of how the proceeds from the sale of the well interests were distributed.

73.     Further, when Mr. Driver turned over what was purported to be the Debtors' server and assured the Trustee that "I have never fired it up to try and check the email boxes, but according to our former IT firm it's in there."   The former IT firm was IS&T.

74.     However, when the Trustee engaged Digital Discovery to access the information on the server, the last information contained therein was from June 5, 2014.   Digital Discovery found that on June 5, 2014, the Aztec Entities email was transferred from the server to Microsoft Office 365 (the "365 Account"), a cloud based email service, a fact that Mr. Driver concealed from the Trustee.

75.     Upon speaking with Kaylee Lard at IS&T, Aztec's Internet Provider, Trustee's Counsel was informed that when Jeremy Driver ceased doing business with IS&T they lost their partner portal and hence access to Aztec's 365 Account.  Ms. Lard confirmed that Aztec always paid Microsoft directly for the 365 Account, a fact that Mr. Driver concealed from the Trustee.

76.     Mr. Driver intentionally concealed the existence of the 365 Account so the Trustee could not recover emails regarding his actions and/or those of the Directors after June 5, 2014.

**IV.**
**Causes of Action**

**A.     Breach of Fiduciary Duty**

77.     Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-76 above.

78.     Jeremy Driver, Mark Vance, Kenneth Lehrer, and Barry Cromeans each breached their fiduciary duty to the Debtors through fraudulent conveyances, insider preferences, and intentional avoidance of the Debtors' obligations in pursuit of personal enrichment.

79. Jeremy Driver served as President of Aztec and, later, as the fourth Director and Chairman of the Board of Directors of Aztec.  Mark Vance and Kenneth Lehrer served on the Debtor's Board of Directors.  Barry Cromeans served as the Debtor's CFO.  Because of their positions as officers or directors of the Debtors , Driver, Vance, Lehrer, and Cromeans all owed the Debtors  and its shareholders a fiduciary duty.

80. Corporate officers and directors owe the corporation three broad duties: (1) the duty of care; (2) the duty of loyalty; and (3) the duty of obedience.  In addition, as fiduciaries of the Debtor, Jeremy Driver, Mark Vance, Kenneth Lehrer, and Barry Cromeans owed the duty of utmost good faith and fair dealing.  The Texas Supreme Court has interpreted this duty to require the executive "to acquire for the non-executive every benefit that he exacts for himself."[2]  Fiduciaries are required to exercise good faith and diligence and are bound to the highest obligations of fair dealing.

81. Jeremy Driver, Mark Vance, Kenneth Lehrer, and Barry Cromeans, through their ownership, management, and control of the Debtors, directed the assets of the Debtors to friends and family and away from the Debtors or their obligations.

82. Through various illicit transfers from the Debtors to themselves, other Defendants, and other insiders prior to the Debtors' creditors, Jeremy Driver, Mark Vance, Kenneth Lehrer, and Barry Cromeans breached their fiduciary duties to the Debtors.

83. Jeremy Driver, Mark Vance, Kenneth Lehrer, and Barry Cromeans engaged in self-dealing through the transfer of funds from the Debtors to themselves and the other Defendants, when such funds otherwise would have been provided to the Debtors or its creditors, and caused the Debtors to suffer damages as it is unable to fulfill its obligations to its creditors.

---

[2]  *KCM Financial, LLC v. Bradshaw*, 457 S.W. 3d 70, 82-83 (Tex. 2015).

84.     The transfer of these funds was accomplished through the interplay between the Defendants and the Debtors, and the execution of the agreements made between them, including: the sale of working interesting in Robinson Wells to Thomas K. Erwin, LLC, by and through Thomas K. Erwin; the sale of working interests in SYDRI-operated wells to Dallas Petroleum Group; the sale of all interests in rights to 222 wells in Texas to Trek Partners, LLC; the sale of all Limited Partnership assets to Trek Partners; the sale of all Aztec furniture and computers; the distribution of Limited Partnership proceeds to insiders; the salaries and benefits of Defendants; the $600,000 loan from Creditsuisse Ltd. for Aztec; settlement of the Ziegler-Peru Litigation;  and the salaries and benefits provided to the Defendants.

85.     In every instance, the actions identified above were taken for the benefit of Jeremy Driver, Mark Vance, Kenneth Lehrer, and Barry Cromeans at the detriment of the Debtors.

86.     As President and Chairman of the Board of Directors for the Aztec Debtor, Mr. Driver breached his fiduciary duties by agreeing to the terms of settlement in the Johnson Litigation and the Ziegler-Peru Litigation; by agreeing to obligate the Aztec Debtor to pay Barry Cromeans the sum of $175,000 per year plus $400,000 in stock options and benefits without Board of Director approval when the same services were previously provided at a fraction of that price; by obligating the Aztec Debtor to Creditsuisse, Ltd. in the amount of $600,000 when such funds were not used for the benefit of the Debtors; by obligating the Debtors to Christian, Smith & Jewell, LLP for unnecessary services; by selling off the Aztec Entities interests in oil and gas wells to friends at prices lower than other options readily available to Mr. Driver and the Debtors; by selling the remaining

assets of the Limited Partnerships to Trek Partners; by distributing $1,227,737.15 to Limited Partnership investors, $320,318.38 to Barry Cromeans, and $176,741.74 to himself.  Mr. Driver admitted in his 2004 examination that he did not market the Aztec Entities' interests in oil and gas wells, but sold them to friends despite the fact that third parties such as Burch Downman committed to beat any offer made by Trek Partners for the Debtors' assets.

87.     As members of the Aztec Debtor's Board of Directors, Mark Vance and Kenneth Lehrer breached their fiduciary duties to the Debtors by providing blanket authorizations for Jeremy Driver to negotiate full and final settlements of the Johnson Litigation and the Ziegler-Peru Litigation; by electing Jeremy Driver as the fourth Director and Chairman of the Board of Directors; by providing Jeremy Driver with severance pay; by amending the bylaws of the Debtor to empower Driver through withdrawing the ability of the shareholders to take action by written consent and directing that only the Chairman of the Board of Directors, a majority of the Board of Directors, or the President or CEO can call a special meeting whereby the shareholder could take action—effectively empowering Driver to control the Debtors himself; approving the dissolution of the Limited Partnerships; and authorizing Driver to use his discretion with regard to remaining corporate funds.

88.     As the CFO of the Aztec Debtor, Barry Cromeans breached his fiduciary duty to the Debtors through his participation and instigation of the $320,318.38 transfer from the Debtors to Cromeans mere months prior to bankruptcy and the initial salary of $175,000 per year plus $400,000 in stock options and benefits for services Cromeans knew and understood to be minimal in context of such compensation.

89.   The business judgment rule does not apply in this case because Driver, Vance, Lehrer, and Cromeans used their powers to direct corporate affairs so as to obtain disproportionate benefits for themselves.  The business judgment rules does not apply because the actions of Driver, Vance, Lehrer, and Cromeans are grossly negligent, because Driver, Vance, Lehrer, and Cromeans did not act in good faith, and because Driver, Vance, Lehrer, and Cromeans did not act on an informed basis.  The business judgment rules does not apply because fraud was committed in connection the transfers set forth in this Complaint.

90.   Because of Jeremy Driver's, Mark Vance's, Kenneth Lehrer's, and Barry Cromeans's breach of fiduciary duty, the Debtor has been damaged in an amount of up to $25,000,000.00, which represents the claims of creditors that the Debtors have been unable to pay as a result of the breach.

### B.   Aiding and Abetting Breach of Fiduciary Duty

91.   Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-90 above.

92.   Trek Partners, LLC, Joshua Posten; Mark Vance Individually and as a Director of Aztec Oil & Gas, Inc. Et Al; Kenneth Lehrer, Individually and as a Director of Aztec Oil & Gas, Inc. Et Al; Barry Cromeans, Individually and as Former CFO for Aztec Oil & Gas, Inc., Et Al.; Thomas K. Erwin, LLC, Thomas K. Erwin, and Ziegler-Peru, Inc., each intentionally assisted Jeremy Driver in his breach of fiduciary duty to the Debtors.

93.   As set forth above, Jeremy Driver owed a fiduciary duty to the Aztec Debtor as its President, and later, as its fourth Director and Chairman of the Board of Directors.  The remaining Aztec Entities existed with no Directors and no Board, and Driver executed

documents on behalf of all Aztec Entities to transfer assets from the Debtors prior to filing the voluntary petition.

94.     Defendant Trek Partners, LLC and Joshua Posten intentionally and actively assisted Jeremy Driver in the commission of torts against the Debtors, including breach of fiduciary duty, through their agreement to purchase Limited Partnership assets for $1.2 million.  Trek Partners, LLC and Joshua Posten further assisted Jeremy Driver in the breach of his fiduciary duty to the Debtors through their agreement to acquire all interest in 222 wells in Texas to Trek Partners, LLC for $1.2mm, deliberately and intentionally assisting in the transfer of those assets at below market value to the detriment of the Debtors.  The assistance and encouragement of  Trek Partners, LLC and Joshua Posten was a substantial factor in Jeremy Driver's breach of fiduciary duty to the Debtors.

95.     Mark Vance and Kenneth Lehrer each intentionally and actively assisted Jeremy Driver in the commission of torts against the Debtors, including breach of fiduciary duty, through their actions at the special meeting of the Board of Directors held on April 2, 2015, electing Driver as the fourth Director and Chairman of the Board of Directors and providing Driver with severance pay.  Vance and Lehrer further intentionally and actively assisted Driver in his breach of fiduciary duty to the Debtors through their actions amending the Aztec Debtor's bylaws to the benefit of Driver, authorizing the Aztec Debtor to provide a security interest to the law firm Christian Smith & Jewell, LLP, and providing post-sale approval to Driver with regard the Trek Partners/Joshua Posten transfer of Debtors' assets.  Finally, Vance and Lehrer intentionally and actively assisted Jeremy Driver in his breach of fiduciary duty through their approval of the sale of Limited Partnership assets, the dissolution of the Limited Partnerships, the continuation

of Driver's salary, and the authorization for Driver to disperse remaining corporate funds using his discretion.

96.     Barry Cromeans intentionally and actively assisted Jeremy Driver in the commission of torts against the Debtors, including breach of fiduciary duty.  Nominally hired as an in-house CFO, Mr. Cromeans was paid an exorbitant sum ($175,000 per year plus $400,000 in stock options and other benefits) to perform the same functions that the Debtor paid its prior CFO a total of $135,313 to perform over an eight-year span.  In addition, Mr. Driver distributed to Mr. Cromeans $320,318.38 of funds rightfully belonging to the Debtors from December 23, 2015 to April 15, 2016.  Mr. Cromeans was aware that these transfers were not supported by reasonable or commercial consideration and constituted fraudulent transfer of assets from the Debtors to him, for his own use and benefit.

97.     Thomas K. Erwin, LLC, Thomas K. Erwin each intentionally and actively assisted Jeremy Driver in the commission of torts against the Debtors, including breach of fiduciary duty, through their agreement with Driver to purchase all working interest in Robinson Wells in Fort Bend County, Texas for $575,000 without Board approval to the detriment of the Debtor.

98.     Ziegler-Peru, Inc. intentionally and actively assisted Jeremy Driver in the commission of torts against the Debtors, including breach of fiduciary duty, through its agreement with Debtor whereby the Debtors transferred all interest in wells drilled or to be drilled by Ziegler-Peru to Ziegler-Peru.  This agreement was made for the benefit of Driver and Ziegler-Peru to the detriment of the Debtors.  Ziegler-Peru made this agreement with Driver, acquiring all interest in the Debtors' wells, after Ziegler-Peru initially offered to either (1) sell its interest in the wells; or (2) partition the wells between the two parties.

99.     Each of the Defendants knowingly and maliciously induced Driver to breach his fiduciary duties.  Each Defendant knew Driver was breaching his fiduciary duty to the Debtors in the manners set forth above.  Each of the Defendants knowingly benefitted from the breaches and accepted and retained the benefit of those breaches.  As a direct and proximate result of Driver's breach of fiduciary duty, aided and abetted by each Defendant, the Debtors have sustained and will continue to sustain actual and consequential damages.

### C.     Fraudulent Transfer

100.    Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-99 above.

101.    Debtors, Jeremy Driver, Mark Vance, Kenneth Lehrer, Barry Cromeans, Thomas K. Erwin, LLC, Thomas K. Erwin, Ziegler-Peru, Inc., Trek Partners, LLC, Members/Investors of Trek Partners, LLC Nos. 1-4, and Joshua Posten transferred assets from the Debtors and/or obligated the Debtors with the intent to hinder, delay, or defraud the creditors of the Debtors by and through the following actions:

    a.  Settlement of the Ziegler-Peru Litigation through transfer of Debtors' interest in wells drilled or to be drilled by Ziegler-Peru to Ziegler-Peru;

    b.  Settlement of Debtor's claims against Waylon Johnson for payment by Debtors to Johnson of $100,000;

    c.  Hiring Barry Cromeans to serve as CFO for the Debtors with a $175,000 salary in addition to $400,000 of benefits through stock options, medical insurance, and other perks;

    d.  Obligating the Debtors through the acquisition of a $600,000 loan from Creditsuisse Ltd. when loan proceeds were not utilized in furtherance of legitimate business activities;

    e.  Engaging the law firm of Christian, Smith & Jewell, LLP for a $50,000 retainer without Board approval and for no legitimate purpose;

    f.  Providing the law firm of Christian, Smith & Jewell, LLP with a second priority security interest for no legitimate purpose;

    g.  Securing severance pay for Mr. Driver through a special meeting of the Board of Directors on April 2, 2015;

    h.  Transfer of all working interest from the Robinson Wells in Fort Bend county, Texas to Thomas K. Erwin, LLC from Debtors for the sum of $575,000 without Board ;

    i.  Transfer of all working interest in the SYDRI-operated wells to Dallas Petroleum Group for the sum of $528,168;

    j.  Transfer of all interest and rights in 222 wells in Texas to Trek Partners, LLC for the sum of $1,200,000;

    k.  Transfer of all Limited Partnership assets to Trek Partners, LLC for $1,200,000;

    l.  Transfer of $1,227,737.15 from the Debtor to investors of the Limited Partnerships, to Barry Cromeans (in the amount of $320,318.38), and to Mr. Driver (in the amount of $176,741.74);

    m.  Transfer of $308,837.82 to the law firm of Christian, Smith & Jewell, LLP

102.  The transfers made between the Debtors and Jeremy Driver were made without Debtors receiving a reasonably equivalent value in exchange for the transfer.

TRUSTEE'S ORIGINAL COMPLAINT—Page 23
D/990305v1

103.   The transfers made between the Debtors and Barry Cromeans were made without Debtors receiving a reasonably equivalent value in exchange for the transfer.

104.   The transfers made between the Debtors and Thomas K. Erwin, LLC were made without Debtors receiving a reasonably equivalent value in exchange for the transfer.

105.   The transfers made between the Debtors and Ziegler-Peru, Inc. were made without Debtors receiving a reasonably equivalent value in exchange for the transfer.

106.   The transfers made between the Debtors and Trek Partners, LLC were made without Debtors receiving a reasonably equivalent value in exchange for the transfer.

107.   The Defendants intended and knew that the Debtors would incur debts beyond its ability to pay.  This was the purpose of the Debtors: to enrich the Defendants by draining its profits and assets, and encumbering the Debtors with obligations prior to filing the voluntary petition.

108.   Despite intending and knowing the Debtors would incur debts beyond its ability to pay, the Defendants pursued this course of action with the intent and desire that the Debtors incur more obligations and debt while simultaneously transferring all assets and revenue from the Debtor to the Defendants.

### D.   Unjust Enrichment

109.   Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-108 above.

110.   Jeremy Driver, Mark Vance, Kenneth Lehrer, Barry Cromeans, Thomas K. Erwin, LLC, Thomas K. Erwin, Ziegler-Peru, Inc., Trek Partners, LLC, Members/Investors of Trek Partners, LLC Nos. 1-4, and Joshua Posten all utilized fraud and/or the taking of an undue advantage to obtain assets and revenue that rightly belonged to the Debtors.

111.    Jeremy Driver, Mark Vance, Kenneth Lehrer, Barry Cromeans, Thomas K. Erwin, LLC, Thomas K. Erwin, Ziegler-Peru, Inc., Trek Partners, LLC, and Joshua Posten fraudulently transferred the Debtors' assets from the Debtors for their own use and benefit.

112.    Jeremy Driver, Mark Vance, Kenneth Lehrer, Barry Cromeans, Thomas K. Erwin, LLC, Thomas K. Erwin, Ziegler-Peru, Inc., Trek Partners, LLC, and Joshua Posten obtained the assets of the Debtors through insider transactions that were not supported by reasonably equivalent consideration.

113.    Jeremy Driver, Mark Vance, Kenneth Lehrer, Barry Cromeans, Thomas K. Erwin, LLC, Thomas K. Erwin, Ziegler-Peru, Inc., Trek Partners, LLC, and Joshua Posten fraudulently transferred the Debtors' assets to Driver, Cromeans, Thomas K. Erwin, LLC, Ziegler-Peru, Inc., and Trek Partners, LLC for the benefit of those Defendants, and to the detriment of the Debtors, as assets rightfully belonging to the Debtors were no longer available to satisfy the claims of the Debtors' creditors.

114.    Jeremy Driver, Mark Vance, Kenneth Lehrer, and Barry Cromeans exercised undue advantage over the Debtors through their management, ownership, or control of the Debtors to force the Debtors to enter into the various contracts and agreements whereby its assets were transferred in exchange for inequivalent value.  These agreements were designed and intended to benefit the Defendants to the detriment of the Debtors. Through these agreements, the Defendants intentionally and captured the assets of the Debtors, rendering it essentially insolvent, depriving the Debtors of the ability to pay its creditors, and financially benefiting the Defendants.

### E.    Constructive Trust and/or Equitable Lien

115.    Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-114 above.

116.    Defendants have been wrongfully enriched through their acquisition of the Debtors' assets that should rightfully be available to satisfy the claims of creditors.

117.    Through fraud and breach of fiduciary duty, the Defendants acquired the Debtors' assets, including cash, mineral interests, and other intangible, real, and personal property.

118.    Immediately prior to filing Debtors' Voluntary Petitions, Driver distributed more than $1,000,000 of Debtors' assets to himself, Barry Cromeans, and investors in the Limited Partnerships, despite the fact that the Limited Partnerships owed money to the Aztec Debtor.

119.    Driver, Vance, and Lehrer orchestrated the execution of agreements between the Debtors and Barry Cromeans, Thomas K. Erwin, LLC, Thomas K. Erwin, Ziegler-Peru, Inc., Trek Partners, LLC, and Joshua Posten, which served no purpose but to enrich the Defendants through the transfer of assets from the Debtors and the transfer of debt to the Debtors. Despite the terms of these agreements providing consideration to the Debtors, the assets Debtors transferred to the Defendants far exceeded any consideration received by the Debtors.   The purpose of these agreements and the related transfers was to profit the Defendants at the expense of the Debtors.

120.    Through these actions, the Defendants created a situation wherein they received all profits and assets of the Debtors prior the Debtors' bankruptcies and avoided payment to the Debtors' creditors.   This resulted in unjust enrichment of the wrongdoers: the

Defendants engineered a system to benefit themselves to the detriment of the Debtors' creditors.

121.    The Debtors' physical assets and mineral interests, wrongfully transferred to Defendants Trek Partners, LLC, Thomas K. Erwin, LLC, and Ziegler-Peru, Inc., were sold for less than market value in order to benefit the Defendants, and are currently owned or possessed by Defendants Trek Partners, LLC, Thomas K. Erwin, LLC, and Ziegler-Peru, Inc.

122.    While the R.E. David Report estimated future net income of the Aztec Entities at more than $46 million, Driver sold those assets for approximately $2.3 million (including the November 1, 2015 sale of 222 wells to Trek Partners, LLC for $1.2 million and the December 1, 2014 sale of the Robinson Wells to Thomas K. Erwin, LLC for $575,000).

123.    While the Debtors invested approximately $10 million with Ziegler-Peru, and had an outstanding deposit balance of $1,889,000 with Ziegler-Peru, Inc., Driver settled the Ziegler-Peru litigation through transfer of the Debtors' interest in wells drilled or to be drilled by Ziegler-Peru to Ziegler-Peru.  This action was taken despite the fact that Ziegler-Peru offered settle the litigation with the Debtors through the sale of its interests in the wells or via a partition of the wells between the parties.  Instead, Driver simply gave the Debtors' assets away to Ziegler-Peru through the settlement.

124.    Because of Defendants' actions, a constructive trust and/or equitable lien should be placed on the assets of Defendants Trek Partners, LLC, Thomas K. Erwin, LLC, and Ziegler-Peru, Inc.

### F.      Conspiracy

125.   Trustee incorporates herein, as if fully set forth, the facts and allegations pled in
paragraphs 1-124 above.

126.   Defendants Driver, Vance, and Lehrer jointly participated in concerted action to commit
the torts described herein.  Driver, Vance, and Lehrer entered into an agreement among
themselves for the unlawful purpose of defrauding the Debtors, converting the business
opportunities of the Debtors to their own benefit, and otherwise causing damage to the
Debtors by unlawful means.  Such conduct constitutes concerted action and/or a
conspiracy which proximately caused the occurrences and injuries made the basis of this
suit.  Driver, Vance, and Lehrer are therefore jointly and severally liable for all special,
actual, and consequential damaged sustained by the Debtors.

### G.      Damages

143.   Trustee seeks damages as outlined above, in addition to reasonable attorney's fees, court
costs, and pre- and post-judgment interest as allowed by law.

144.   Trustee seeks monetary relief in excess of $25,000,000.00

### H.      Conclusion & Prayer

**WHEREFORE, PREMISES CONSIDERED,** the Trustee requests that the Court
render a judgment against Trek Partners, LLC, Joshua Posten, Members/Investors of Trek
Partners, LLC Nos. 1-4, Jeremy Driver, Individually and as President and a Director of Aztec Oil
& Gas, Inc. Et Al; Mark Vance Individually and as a Director of Aztec Oil & Gas, Inc. Et Al;
Kenneth Lehrer, Individually and as a Director of Aztec Oil & Gas, Inc. Et Al; Barry Cromeans,
Individually and as Former CFO for Aztec Oil & Gas, Inc., Et Al.; Thomas K. Erwin, LLC,
Thomas K. Erwin, and Ziegler-Peru, Inc., and award the Trustee damages as requested herein,

attorney's fees, pre-judgment and post-judgment interest and court costs, and for such other and further relief at law and in equity that this Court deems just.

Respectfully submitted this 16th day of August, 2018.

By:   _/s/   Julie M. Koenig_____

## COOPER & SCULLY, PC.

JULIE M. KOENIG
Texas Bar No. 14217300
Southern District No. 10396
815 Walker, Suite 1040
Houston, Texas 77002
713/236-6800 (Telephone)
713/236-6880 (Telecopier)
Julie.Koenig@cooperscully.com
ERIC W. HINES
Texas Bar. No. 24010107
Southern District No. 975561
900 Jackson Street, Suite 100
Dallas, TX 75202
214/712-9500 (Telephone)
214/712-9540 (Telecopier)
Eric.Hines@cooperscully.com

## POTTS LAW FIRM

T. MICAH DORTCH
Texas Bar No. 24044981
Southern District No. 630903
2911 Turtle Creek Blvd., Suite 1000
Dallas, Texas 75219
972/804-9530 (Telephone)
mdortsch@potts-law.com
CHRISTOPHER D. LINDSTROM
Texas Bar No. 24032671
Southern District No. 33525
3737 Buffalo Speedway, Suite 1900
Houston, Texas 77098
713/963-8881 (Telephone)
713/583-5388 (Telecopier)
clindstrom@potts-law.com

## ATTORNEYS FOR THE TRUSTEE